Jane DOE, on behalf of her minor son, Dennis Doe, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Kenneth J. KOGER, Individually and in his capacity as Superintendent of the School City of Mishawaka; John Shotts, Individually and as Director of Special Education for the School City of Mishawaka; Ronald Kronewitter, George Vernasco, Elvira Trimboli, Samuel Mercantini and Rosemary Spalding, Individually and in their official capacity as Members of the Board of School Trustees of the School City of Mishawaka; Harold H. Negley, in his official capacity as Indiana Superintendent of Public Instruction; and Gilbert Bliton, in his official capacity as Director of Special Education for the State Department of Public Instruction, Defendants.

Civ. A. No. S 79–14.

United States District Court,
N. D. Indiana,
South Bend Division.

Nov. 21, 1979.
Supplemental Entry Dec. 3, 1979.

Kyle M. Payne, Legal Services Program of Northern Indiana, Inc., South Bend, Ind., for plaintiffs.

Theodore L. Sendak, Atty. Gen. of Indiana, Ronald J. Semler, Deputy Atty. Gen., Indianapolis, Ind., James J. Olson, Mishawaka, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

By his mother, Dennis Doe has brought this action challenging his expulsion from school. (By order of this Court, Dennis Doe and his mother, Jane Doe, have been granted permission to use alternative names.) The defendants are the Board of the School City of Mishawaka, certain officials of the school, and certain officials of the State Department of Public Instruction. The plaintiff complains that he was expelled in violation of the equal protection clause of the Fourteenth Amendment to the Constitution and in violation of the Education of the Handicapped Act (20 U.S.C. §§ 1401–1461) (Handicapped Act) and the regulations promulgated under the Handicapped Act (46 C.F.R. §§ 121a.1–121a.754).

This memorandum and order will dispose of several motions. The plaintiff has moved for certification of a class and for partial summary judgment. The state defendants have moved for dismissal or, in the

alternative, for a stay pending the exhaustion of administrative remedies. The local defendants have moved for dismissal or, in the alternative, for summary judgment.

The parties agree on the basic factual background. Until October 18, 1978, Dennis attended the John Young School as a mildly mentally handicapped student. On October 18, 1978, the principal of John Young School suspended Dennis for disciplinary reasons and recommended that Dennis be expelled for the remainder of the school year. Pursuant to procedures provided for all Indiana public school disciplinary expulsions, an expulsion hearing was held on November 22, 1978, findings and recommendations were issues on December 1, 1978, and Dennis was formally expelled for the remainder of the school year on December 5, 1978. Within two days of Dennis's formal expulsion, Dennis's attorney contacted the local defendants, informing them that Dennis would appeal the expulsion, and requesting that there be held a Rule S–1 hearing. (Rule S–1 is a detailed promulgation issued by the Commission on General Education of the Indiana State Board of Education. Among other things Rule S–1 establishes certain specific procedures to be used in the placement of mildly mentally handicapped students and other students in need of special education.) On December 18, 1978, it was agreed between the parties that, pending further proceedings, Dennis would be placed in an interim educational program beginning January 3, 1979. On January 3, 1979, Dennis returned to school for the remainder of the school year. This federal court action followed.

## CLASS CERTIFICATION ISSUES

The plaintiff has moved this Court for an order certifying a class consisting of "all children attending schools operated by the School City of Mishawaka who are in need of or will in the future be in need of special education within the meaning of the Education of the Handicapped Act." The plaintiff does not contend that a large number of special education students were actually

suspended or expelled by the School City of Mishawaka during the 1978–79 school year; rather, he contends that relief should be granted on behalf of all special education students because they all face the possibility of disciplinary suspension or expulsion under the school's present policies. For purposes of ruling on this motion, this Court will consider separately the plaintiff's constitutional and statutory claims.

As to the constitutional claim asserted on behalf of the requested class, it is clear that the claim would have to be promptly dismissed. The requested class would have only a claim for a threatened violation of a constitutional right. This Court has no jurisdiction over a claim for a threatened violation of a constitutional right. Such a claim fails to satisfy the "case or controversy" requirement of Article III of the Constitution. *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), *Boyle v. Landry*, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971). A class should not be certified if it is clear that the claim of the class is void.

The only class which could possibly assert a constitutional claim would have to consist of all special education children actually suspended or expelled by the School City of Mishawaka. But, the plaintiff does not allege that class to be so numerous that joinder of all members is impractical. A class action may be pursued only if the class is so numerous that joinder of all members is impractical. Federal Rules of Civil Procedure 23(a)(1). As to the claim under the Constitution, the motion for an order certifying a class must be denied for failure to satisfy the numerosity requirement.

As to the claim under the federal statute and regulations, a class action would similarly have to be dismissed. The relief requested on behalf of the class is an order requiring the local and state defendants to change their suspension and expulsion policies. The Handicapped Act might allow such a class action to be brought. However, the Department of Health, Education and Welfare (HEW) has set up administrative procedures for the enforcement of its regulations (45 C.F.R. §§ 121a.580–121a.593), and the plaintiff has not sought redress through those administrative procedures. Until available administrative remedies have been exhausted, a claim may not be asserted in court. *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977).

It should be noted that HEW apparently has not set up administrative procedures for providing individual students with redress for a school's failure to comply with HEW regulations. It follows that exhaustion of administrative remedies would not be required of a class of plaintiffs seeking compensation for damages actually incurred because of violations of the Handicapped Act or regulations promulgated under that act. But the plaintiff does not allege that class to be so numerous that joinder of all members is impractical. Therefore, like the claim under the Constitution, the claim under the statute and the regulations cannot be certified a class action because the class does not satisfy the numerosity requirement. See Federal Rules of Civil Procedure 23(a)(1).

The motion for an order certifying a class must be denied.

### EXHAUSTION ISSUES

The defendants have argued that the plaintiff should not be allowed to pursue this action because the plaintiff has failed to exhaust administrative remedies available within HEW. The plaintiff is seeking redress for violations of his substantive rights under the Handicapped Act. By bringing this action, the plaintiff has presupposed that the Handicapped Act provides substantive rights to students attending a school receiving funds under that act. The defendants have not challenged the plaintiff's presupposition, and this Court has no reason to doubt that the Handicapped Act does provide students substantive rights under the considerations outlined in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The defendants have been unable to show this Court any

HEW administrative procedures providing individual students with redress for violations of their substantive rights. The HEW administrative procedures available do not provide for the compensation of individual students whose Handicapped Act rights have been violated. Before an action may be brought in court, administrative remedies must be exhausted only if they are available. *Lloyd v. Regional Transportation Authority, supra.* There being no HEW administrative remedies providing for the compensation of individual students whose Handicapped Act rights have been violated, this Court must allow the plaintiff's action without requiring exhaustion of HEW administrative remedies.

■ The defendants have also argued that the plaintiff should not be allowed to pursue this action because the plaintiff has failed to exhaust administrative remedies available at the local and state levels. The plaintiff is challenging both his expulsion and the procedure by which he was expelled. The local and state administrative remedies available are basically appeals from the plaintiff's expulsion. The local and state administrative remedies available do not provide for a challenge to the procedure by which the plaintiff was expelled. Before an action may be brought in court, administrative remedies must be exhausted only if they are available. *Lloyd v. Regional Transportation Authority, supra.* Since the available local and state administrative remedies were not designed for the claim brought by the plaintiff, the plaintiff acted properly in bringing this action in this Court without exhausting the available local and state administrative remedies.

### STATUTORY ISSUES

■ By various sections of the Handicapped Act and the HEW regulations promulgated under that Act, it is made clear that the Handicapped Act was intended to limit a school's right to expel handicapped students. 20 U.S.C. § 1415 sets out the procedure by which schools receiving funds under the Handicapped Act are to change the placement of handicapped students.

Neither 20 U.S.C. § 1415 nor any of the HEW regulations interpreting that section (45 C.F.R. §§ 121a.500–121a.514) provide for the expulsion of handicapped students. 20 U.S.C. § 1412 provides in part:

In order to qualify for assistance under this subchapter in any fiscal year, a State shall demonstrate to the Commissioner that the following conditions are met:

(1) The State has in effect a policy that assures all handicapped children the right to a free appropriate public education.

In the comments to 45 C.F.R. § 121a.552 (which interprets 20 U.S.C. § 1412), HEW cites as pertinent certain language in the analysis of the regulations for Section 504 of the Rehabilitation Act of 1973:

With respect to determining proper placements, the analysis states: " * * * it should be stressed that, where a handicapped child is so disruptive in a regular classroom that the education of other students is significantly impaired, the needs of the handicapped child cannot be met in that environment. Therefore regular placement would not be appropriate to his or her needs * * *."

As HEW interpreted the Handicapped Act, schools were not to expel students whose handicaps caused them to be disruptive; rather, schools were to appropriately place such students. This Court must agree with HEW's interpretation. Congress's intent in adopting the Handicapped Act is clear. A school which accepts Handicapped Act funds is prohibited from expelling students whose handicaps cause them to be disruptive. The school is allowed only to transfer the disruptive student to an appropriate, more restrictive, environment. This Court is not alone in making this ruling. A similar ruling was made in *Stuart v. Nappi*, 443 F.Supp. 1235 (D.Conn.1978).

The prohibition of the Handicapped Act includes not only formal expulsions, but also informal expulsions like Dennis's indefinite suspension pending formal expulsion. It is the removal of handicapped students from school which the Handicapped Act limits. A disruptive handicapped student may be suspended only if the school is un-

able to immediately place the student in an appropriate, more restrictive, environment. See *Stuart v. Nappi, supra* (interpreting 45 C.F.R. § 121a.513). A disruptive handicapped student may be suspended only until the school is able to place the student in the appropriate, more restrictive, environment. See *Stuart v. Nappi, supra* (interpreting 45 C.F.R. § 121a.513).

But the Handicapped Act does not prohibit all expulsions of disruptive handicapped children. It only prohibits the expulsion of handicapped children who are disruptive because of their handicap. Whether a handicapped child may be expelled because of his disruptive behavior depends on the reason for the disruptive behavior. If the reason is the handicap, the child cannot be expelled. If the reason is not the handicap, the child can be expelled. While 20 U.S.C. § 1415 and its accompanying regulation do not provide for the expulsion of handicapped children, they do not prohibit the expulsion of handicapped children. While 20 U.S.C. § 1412 and its accompanying regulations require schools to guarantee that handicapped students have the right to be educated, they do not require schools to guarantee that handicapped students be educated. It is the purpose of the Handicapped Act and its accompanying regulations to provide handicapped students placement which will guarantee their education despite the students' handicap. It is not the purpose of the Handicapped Act to provide handicapped students placement which will guarantee their education despite the students' will to cause trouble. For an appropriately placed handicapped child, expulsion is just as available as for any other child. Between a handicapped child and any other child, the distinction is that, unlike any other disruptive child, before a disruptive handicapped child can be expelled, it must be determined whether the handicap is the cause of the child's propensity to disrupt.

And this issue must be determined through the change of placement procedures required by the Handicapped Act. Since it is the Handicapped Act which requires the consideration of whether a handicapped child's propensity to disrupt is caused by his handicap, Handicapped Act procedures should be followed. The procedures best suited to protect Handicapped Act rights are the procedures provided by the Handicapped Act. When a handicapped child is involved, expulsion must not be pursued until after it has been determined that the handicapped child has been appropriately placed.

The School City of Mishawaka violated the Handicapped Act when it expelled Dennis without first determining, by Handicapped Act procedures, whether his propensity to disrupt was the result of his inappropriate placement. This does not mean, however, that the plaintiff is entitled to compensation. Whether the plaintiff is entitled to compensation depends on whether the school has caused him to lose any education. Whether the school has caused the plaintiff to lose any education depends on whether he would have been expelled even if the appropriate procedures had been followed. And whether he would have been expelled even if the appropriate procedures had been followed depends on whether his propensity to disrupt was the result of his inappropriate placement. As to whether the plaintiff's propensity to disrupt was the result of his inappropriate placement, the parties apparently disagree. Therefore, as far as the federal statute and regulations are concerned, whether the plaintiff is entitled to any compensation is a question which must await trial.

## CONSTITUTIONAL ISSUES

The plaintiff complains that his expulsion violated the equal protection clause of the Fourteenth Amendment to the Constitution. Courts use one of two tests for determining whether a given policy violates the equal protection clause. Courts will strictly scrutinize a policy which denies rights to one class of persons while granting those rights to another class of persons if either the rights involved are fundamental rights or the burdened class is a suspect class. *San Antonio Independent School District v.*

*Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). All other policies are liberally scrutinized to determine whether they rationally further a legitimate state purpose or interest. *Id.* The plaintiff complains that he has been denied education and that this denial is unjustifiable because he is handicapped. Apparently, the plaintiff believes that the policy of disciplinary expulsions should be subjected to strict scrutiny. The purported fundamental right is the right to an education. The purported suspect class is the handicapped.

■ Education is not a fundamental right. While the United States Supreme Court has not so held (See *San Antonio Independent School District v. Rodriguez, supra* ), lower courts have so ruled. *Cary v. Board of Education of Adams-Arapahoe School District 28–J, Aurora, Colorado,* 598 F.2d 535 (10th Cir. 1979), *Guadalupe Organization, Inc. v. Tempe Elementary School District No. 3,* 587 F.2d 1022 (9th Cir. 1978), *Denis J. O'Connell High School v. Virginia High School League,* 581 F.2d 81 (4th Cir. 1978). The Constitution does not require, explicitly or implicitly, that a state educate its residents. The Constitution only requires that if a state makes education available to one resident, then it must make education equally available to all residents. *San Antonio Independent School District v. Rodriguez, supra.*

■ Whether the handicapped are a suspect class need not be decided. Even if the handicapped were a suspect class (which this Court seriously doubts), and the strict scrutiny test applied, the plaintiff would have failed to state an equal protection claim. The plaintiff argues that the handicapped are more in need of education than others, that the handicapped are a suspect class, and that therefore the equal protection clause provides the handicapped with a superior right to education. The plaintiff has not asked this Court to rule that the equal protection clause precludes the expulsion of all students; rather, the plaintiff has asked this Court to rule that the equal protection clause precludes only the expulsion of handicapped students. The plaintiff

has not complained that the handicapped are being subjected to invidious discrimination under the guise of disciplinary expulsions; rather, the plaintiff has complained that the handicapped are being subjected to the same disciplinary expulsions as all other students. It is not the purpose of the equal protection clause to guarantee that members of a suspect class be given superior rights under a given policy; rather, it is the purpose of the equal protection clause to guarantee that members of a suspect class be given equal rights under a given policy. The equal protection clause does not require a state to guarantee more education to students with a greater need of an education; rather, the equal protection clause requires a state to guarantee an equal educational opportunity to all students. *Id.* To subject the handicapped to the same disciplinary expulsions as other students is not to invidiously discriminate against the handicapped.

It cannot be contested that disciplinary expulsions are rational. Having undertaken to educate its residents, a state has a duty to provide all students with an equal education opportunity. *Id.* A disruptive student interferes with the education of other students in his school. It is quite rational for a school to reserve the option of expelling any student who is interfering with the education of other students. At least with regard to the handicapped, whatever dangers of invidious discrimination are presented by a policy of disciplinary expulsions, those dangers are outweighed by the rationality of disciplinary expulsions.

## CONCLUSION

The plaintiff's motion for an order certifying a class is denied. The defendants' various alternative motions to dismiss, for summary judgment, or for a stay are denied. The plaintiff's motion for partial summary judgment is granted in part and denied in part.

The sole issue remaining for trial is whether the plaintiff is entitled to compensation under the Handicapped Act and its accompanying regulations.

SUPPLEMENTAL ENTRY

As this Court noted in its memorandum and order of November 21, 1979, the Education of the Handicapped Act and its amendments (20 U.S.C. §§ 1401–1461) severely impede the exercise of discretion by institutions which accept federal funds under the Act. A recent District Court decision in the Eastern District of Pennsylvania dramatizes this by ruling that the Act requires recipients to provide a handicapped child a longer school year than that provided non-handicapped children if the child's handicap necessitates a longer school year: *Armstrong v. Kline*, 476 F.Supp. 583 (E.D.Pa. 1979).