**Michael KAELIN, by his next friend, Marlene Kaelin, Plaintiff-Appellee,**

v.

**John A. GRUBBS, J. B. McCubbin, Walt Ryan, James Bonar, John Maddox, Leola Waller, Dr. James B. Graham and Billie Downing, in their official capacities, Defendants-Appellants.**

No. 81–5101.

United States Court of Appeals,
Sixth Circuit.

Argued March 23, 1982.

Decided July 9, 1982.

Steven L. Beshear, Atty. Gen. of Ky., Frankfort, Ky., Robert L. Chenoweth, Deputy Atty. Gen., F. C. Bryan, Bryan, Fogle & Riggs, Mount Sterling, Ky., for defendants-appellants.

James K. Rogers, Northern Kentucky Legal Aid, Covington, Ky., for plaintiff-appellee.

Before: KEITH and JONES, Circuit Judges and NEWBLATT,* District Judge.

KEITH, Circuit Judge.

The sole issue on appeal is whether an expulsion from school is a "change of placement" within the meaning of the Education for All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.* The United States District

* Hon. Stewart A. Newblatt, U.S. District Judge, Eastern District of Michigan, sitting by designation.

Court for the Eastern District of Kentucky held that an expulsion from school is a "change of placement". We agree, and affirm the judgment of District Judge William O. Bertelsman.

## I. BACKGROUND OF THE EDUCATION FOR ALL HANDICAPPED CHILDREN ACT

This action arises under the Education for All Handicapped Children Act ("Handicapped Children Act"), 20 U.S.C. § 1401 et seq. The Handicapped Children Act was enacted in part to insure the right to a free, appropriate education for all handicapped children. S.Conf.Rep. 94–455, 94th Cong., 1st Sess. 27, reprinted in, [1975] U.S.Code Cong. & Ad.News 1425, 1480; 20 U.S.C. § 1412. Under the Act, every handicapped child must receive an Individualized Educa-

tion Program ("IEP"), designed specially for that child's unique educational needs. 20 U.S.C. § 1401(19).

The Handicapped Children Act also provides handicapped children with various procedural protections. These procedural safeguards extend to the identification and any subsequent evaluation of a child as a handicapped person. See 20 U.S.C. § 1415(b).[1] A handicapped child's initial educational placement and any subsequent change in the placement are also governed by these procedural protections. Id. A multi-disciplined group makes or reviews all placement decisions which affect a handicapped child. In Kentucky, the Administrative Admissions and Release Committee ("AARC") performs this function. See 707 Ky.Ad.Reg. 1:051, § 3.[2]

---

1. 20 U.S.C. § 1415 provides in pertinent part:

    § 1415. Procedural safeguards

    \* \* \* \* \* \*

    (b)(1) The procedures required by this section shall include, but shall not be limited to—

    (A) an opportunity for the parents or guardian of a handicapped child to examine all relevant records with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child;

    \* \* \* \* \* \*

    (C) written prior notice to the parents or guardian of the child whenever such agency or unit—

    (i) proposed to initiate or change, or

    (ii) refuses to initiate or change, the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child;

    (D) procedures designed to assure that the notice required by clause

    (C) fully inform the parents or guardian, in the parents' or guardian's native language, unless it clearly is not feasible to do so, of all procedures available pursuant to this section; and

    (E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

    (2) Whenever a complaint has been received under paragraph

    (1) of this subsection, the parents and guardian shall have an opportunity for an impartial

due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child.

    \* \* \* \* \* \*

    (d) Any party to any hearing conducted pursuant to subsections (b) and (c) shall be accorded (1) the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of handicapped children, (2) the right to present evidence and confront, cross-examine, and compel the attendance of witnesses . . .

    \* \* \* \* \* \*

    (e)(3) During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

    (4) The district courts of the United States shall have jurisdiction of actions brought under this subsection without regard to the amount in controversy.

2. The composition of the AARC is as follows: consulting personnel, i.e., a psychologist or special therapist; the school district superintendent or his designee; the school principal; the

Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, complements the Handicapped Children Act. Section 504 bars discrimination against handicapped persons by programs or activities receiving federal financial assistance. Many of the procedural protections provided in the Handicapped Children Act are also contained in Section 504's implementing regulations. *See* 45 C.F.R. § 84. Specifically, the regulations provide that plenary due process procedures govern the identification, evaluation, and educational placement of a handicapped child. *See* 45 C.F.R. § 84.33.

## II. FACTS

Plaintiff, Michael Kaelin ("Michael"), was a 15 year old ninth grade student at the Walton-Verona Public Schools during the 1978-79 academic year. He has been identified as a handicapped child since kindergarten. In August 1978, the Walton-Verona High School identified and evaluated

child's teacher; the instructional supervisor; the director of the school's exceptional children's program; the child's parents; and the child in appropriate circumstances. *See* 707 Ky.Ad.Reg. 1:051, § 3(1).

The functions of the Administrative Admissions and Release Committee are contained in 707 Ky.Ad.Reg. 1:05, § 3(2). Section 3(2) provides in pertinent part:

(2) The functions of the AARC shall include the following:

(a) Receive referrals of the following nature:

1. Receive written information on identified children not currently enrolled in the local school district who are thought to need special education and related services.

2. Review cases where the School-Based Admissions and Release Committee is not able to determine an appropriate educational placement for a referred pupil and make recommendations as to appropriate educational placement.

(b) Follow due process procedures to insure that exceptional children and their parent(s) are guaranteed procedural safeguards in decisions regarding identification, evaluation, and educational placement.

(c) Assure that appropriate evaluations on referred children are obtained or conducted.

(d) Discuss written results of the formal and informal evaluation.

(e) Make recommendations as to appropriate services and/or programs for the identified child. These recommendations shall be

Michael as a "handicapped or an exceptional child". Pursuant to an Individualized Education Program ("IEP"), he was placed in an Educable Mentally Handicapped ("EMH") classroom.

On March 13, 1979, Michael defied the authority of his teacher, William C. Daniel ("Mr. Daniel"). Michael refused to complete assigned classroom work. He also destroyed a work sheet and one of Mr. Daniel's coffee cups. Moreover, in attempting to leave the classroom, Michael pushed, kicked and hit Mr. Daniel.

The next day, Michael was suspended from school. On April 17, 1979, the Walton-Verona Board of Education ("Board") held a hearing concerning Michael's behavior. The Board did not convene or consult the AARC before or during this hearing. Moreover, the Board did not address the relationship, if any, between Michael's handicap and his disruptive behavior. On April 18, the Board concluded that Michael had violated Ky.Rev.Stat. § 158.150[3] and

in the form of an individual education program (IEP). The AARC shall determine if the local school district can provide appropriate services, if local programs must be changed to accommodate the identified child, if additional services or programs will be developed, or if the child must receive services outside the local school district. For those pupils who shall receive services within the local school district, the appropriate school-base admissions and release committee shall assume responsibility for the implementation, monitoring, evaluation and annual review of the IEP as well as annual review of placement...

3. Ky.Rev.Stat. § 158.150(1) provides in pertinent part:

158.150 Suspension or expulsion of pupils

(1) All pupils admitted to the common schools shall comply with the lawful regulations for the government of the schools. Willful disobedience or defiance of the authority of the teachers or administrators, use of profanity or vulgarity, assault or battery or abuse of other students or school personnel, the threat of force or violence, the use or possession of alcohol or drugs, stealing or destruction or defacing of school property or personal property, the carrying or use of weapons or dangerous instruments, or other incorrigible bad conduct on school property as well as off school property at school sponsored activities constitutes cause for suspension or expulsion from school.

Walton-Verona Board of Education Policy 609.1. Consequently, the Board expelled Michael from school for the remainder of the 1978–79 school year. This expulsion was effective April 30, 1979.

Following his expulsion, Michael, through counsel, requested a due process hearing pursuant to 20 U.S.C. § 1415. He sought this hearing to review the Board's refusal to convene the AARC prior to his expulsion. However, the Kentucky Superintendent of Public Instruction ("State Superintendent") and the Head of the Kentucky Bureau for Exceptional Children ("Exceptional Children Bureau Head") denied his request.

Michael filed a Complaint in the United States District Court for the Eastern District of Kentucky alleging that he was a handicapped child within the meaning of the Handicapped Children Act. He named as defendants the Superintendent of the District ("District Superintendent"), and the chairman and members of the Board, in their official and individual capacities. The State Superintendent and the Exceptional Children Bureau Head were also named as defendants.

Michael alleged that the defendants violated the Handicapped Children Act, Section 504, and the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. He also alleged that Kentucky's expulsion statute, Ky.Rev.Stat. § 158.150,[4] is unconstitutionally vague. In an amended complaint, Michael claimed that any Kentucky statute or regulation authorizing expulsions in contravention of 20 U.S.C. § 1415 is constitutionally invalid. A supplemental complaint sought, *inter alia*, to expunge all records of his expulsion until a due process hearing was conducted pursuant to 20 U.S.C. § 1415.

The district court entered judgment for Michael. The court held that: 1) Michael's expulsion constituted a change of placement within the meaning of the Handicapped Children Act; 2) the defendants did not provide a due process hearing for Michael within the meaning of the Handicapped Children Act; and 3) the procedures used to expel Michael violated the change of placement procedures of the Handicapped Children Act, and of 707 Ky.Ad.Reg. 1:051.[5] The district court issued an injunction requiring the District Superintendent and the Board to expunge the record of Michael's expulsion from the Board's minutes and from his attendance record. Moreover, the maintenance of any other record concerning Michael's expulsion was also enjoined. The defendants perfected this appeal.

## III. DISCUSSION

In this case, Michael was expelled without receiving the procedural protections afforded by the Handicapped Children Act and Section 504's implementing regulations. The Board did not address the relationship between Michael's disruptive behavior and his handicap. Moreover, the AARC was not convened before or during the Board's expulsion hearing. In addition, the State Su-

---

4. See note 3.

5. 707 Ky.Ad.Reg. 1:051, § 6(1) provides in pertinent part:

Section 6. Placement. All exceptional children as defined in KRS 157.200 are eligible for enrollment in a program for exceptional children.

(1) Placement shall be determined by the appropriate admissions and release committee pursuant to the following:

(a) All due process procedures related to placement as required and provided in Section 9 of this regulation and KAR 1:060 shall be followed.

(b) The student recommended for placement in a specific categorical program for exceptional children shall meet the established standards (criteria) for eligibility for placement in that program. A written statement justifying placement shall be maintained in the pupil's file. This statement shall contain a description of each evaluation procedure, test, record or report the admissions and release committee used as a basis for the recommended placement.

(c) Placement shall be based on the child's IEP.

(d) Placement shall be determined at least annually, and shall be made consistent with the least restrictive environment concept as required and provided in Section 7 of this regulation.

perintendent and the Exceptional Children Bureau Head refused Michael's request to convene the AARC following his expulsion.

It is undisputed that Michael is a handicapped child within the meaning of the Handicapped Children Act.[6] Nevertheless, the defendants argue that the procedure used to expel Michael was proper because an expulsion is not a change in placement.[7] Michael contends that the Handicapped Children Act's procedural protections applied because an expulsion constitutes a change in placement. The sole issue on appeal, therefore, is whether an expulsion is a change in educational placement within the meaning of the Handicapped Children Act.[8]

The defendants' argument that an expulsion is not a change in placement ignores a well-reasoned opinion from the Fifth Circuit. In *S–1 v. Turlington*, 635 F.2d 342 (5th Cir.), *cert. denied*, 454 U.S. 1030, 102

---

6. The term "handicapped children" is defined in 20 U.S.C. § 1401(1) as:

   mentally retarded, hard of hearing, deaf, speech impaired, visually handicapped, seriously emotionally disturbed, orthopedically impaired, or other health impaired children, or children with specific learning disabilities, who by reason thereof require special education and related services.

7. The defendants contend that they were only required to follow the due process procedures contained in Ky.Rev.Stat. §§ 158.150(2) and (3). Sections 2 and 3 provide in pertinent part:

   (2) A pupil shall not be suspended from the common schools until after at least the following due process procedures have been provided:

   (a) A pupil has been given oral or written notice of the charge or charges against him which constitute cause for suspension;

   (b) The pupil has been given an explanation of the evidence of the charge or charges if the pupil denies them; and

   (c) The pupil has been given an opportunity to present his own version of the facts relating to the charge or charges. These due process procedures shall precede any suspension from the common schools unless immediate suspension is essential to protect persons or property or to avoid disruption of the ongoing academic process. In such cases, the due process procedures outlined above shall follow the suspension as soon as practicable, but no later than three (3) school days after the suspension.

   (3) The superintendent, principal or head teacher of any school may suspend a pupil but shall report such action in writing immediately to the superintendent and to the parent, guardian or other person having legal custody or control of the pupil. The board of education of any school district may expel any pupil for misconduct as defined in subsection (1), but such action shall not be taken until the parent, guardian or other person having legal custody or control of the pupil has had an opportunity to have a hearing before the board. The decision of the board shall be final.

8. Kentucky's definition of a change in placement is found in 707 Ky.Ad.Reg. 1:051 § 6(2). Section 6(2) provides in pertinent part:

   (2) Change in placement. Change in placement refers to those actions that cause a *significant alteration in programming* for a child who is currently receiving special education and related services. Such alterations may be admissions and release committee initiated or may be the result of extenuating circumstances (e.g. family moves).

   (a) The following actions shall be considered significant alteration or change in placement for an exceptional child. A change from:

   1. Special education and related services to regular education, including regular education with support services;

   2. One categorical program to another (e.g., TMH to EMH);

   3. One program plan to another (e.g. special class to resource room);

   4. One instructional level to another (e.g. elementary to middle school);

   5. A special school or setting to or from a regular school;

   6. One school district to another school district;

   (b) Any change in placement shall follow due process procedures to insure that exceptional children and their parents are guaranteed procedural safeguards in decisions regarding identification, evaluation, and placement, including written parental permission for change in placement.

   (c) Any change in placement shall be subject to established admissions and release committee procedures and consideration of the least restrictive environment concept.

   Whether an expulsion is a change in placement under Kentucky law is irrelevant to our analysis of whether an expulsion from school is a change of placement within the meaning of the Handicapped Children Act. Accordingly, we address no opinion on whether an expulsion is a change in placement under Kentucky law.

S.Ct. 566, 70 L.Ed.2d 473 (1981), the plaintiff school children were mentally handicapped. These plaintiffs were expelled from school for alleged misconduct without receiving the procedural protections required by the Handicapped Children Act, Section 504, and its implementing regulations. The court held that "an expulsion must be accompanied by a determination as to whether the handicapped student's misconduct bears a relationship to his handicap." *Id.* at 346. The state and local school authorities have the burden of determining whether a student's misconduct is a manifestation of the student's handicap. *Id.* at 349. The court did not hold, however, that handicapped children could never be expelled from school. Rather, "expulsion is still a proper disciplinary tool under the [Handicapped Children Act] and section 504 when proper procedures are utilized and under proper circumstances." *Id.* at 348. Unlike the expulsion of a non-handicapped child, however, "the complete cessation of educational services during an expulsion period" could not be authorized for a handicapped child. *Id.*

The court in *Turlington* also addressed the issue of whether an expulsion is a change in placement within the meaning of the Handicapped Children Act. The court held that "a termination of educational services, occasioned by an expulsion, is a change in educational placement, thereby invoking the procedural protections of the [Handicapped Children Act]." *Id.* at 348. The court noted that neither the Handicapped Children Act, Section 504, nor its implementing regulations provided any guidance on this issue. Instead, the court found the reasoning of *Stuart v. Nappi,* 443 F.Supp. 1235 (D.Conn.1978); *Sherry v. New York State Education Department,* 479 F.Supp. 1328 (W.D.N.Y.1979); and *Doe v. Koger,* 480 F.Supp. 225 (N.D.Ind.1979), persuasive support for its holding that an expulsion is a change in educational placement within the meaning of the Handicapped Children Act.

*Stuart v. Nappi,* 443 F.Supp. 1235, is the seminal case which addresses this issue. The plaintiff, a high school student with complex learning disabilities, limited intelligence, and a history of behavioral problems, was suspended from school following her involvement in several school-wide disturbances. She contested a recommendation that she be expelled, requested a hearing and sought review of her special education program. The court enjoined the school board from conducting a hearing to expel the plaintiff. The court reasoned that the Handicapped Children Act prescribed a procedure for transferring disruptive children. *See* 42 C.F.R. § 121a.522. Only a professional team analogous to Kentucky's AARC could change a handicapped child's placement.

The court noted that there was a conflict between the procedures required by the Handicapped Children Act and the disciplinary procedures of the local school. The court, however, relied upon a comment contained in 45 C.F.R. § 121a:

> While the placement may not be changed [after a complaint proceeding has been initiated], this does not preclude a school from using its normal procedures for dealing with children who are endangering themselves or others.

The court interpreted this regulation and the Handicapped Children Act as prohibiting disciplinary measures which effectively change a handicapped child's placement. The court also reasoned that the "right to an education in the least restrictive environment may be circumvented if schools are permitted to expel handicapped children." *Id.* at 1242. Therefore, the court concluded that the "use of expulsion proceedings as a means of changing the placement of a disruptive handicapped child contravenes the procedures of the [Handicapped Children Act]" *Id.* at 1243.

The court in *Stuart v. Nappi,* however, did not hold that handicapped children were immune from school discipline. The court stated:

> Handicapped children are neither immune from a school's disciplinary process nor are they entitled to participate in programs when their behavior impairs

the education of other children in the program. First, school authorities can take swift disciplinary measures, such as suspension, against disruptive handicapped children. Secondly, a [special education committee] can request a change in the placement of handicapped children who have demonstrated that their present placement is inappropriate by disrupting the education of other children. The Handicapped Act thereby affords schools with both short-term and long-term methods of dealing with handicapped children who are behavioral problems. *Id.*

In *Doe v. Koger*, 480 F.Supp. 225, the plaintiff, a mentally handicapped student, was expelled for disciplinary reasons. The plaintiff requested and was denied a special hearing used in the placement of handicapped students. The court held that the language of the Handicapped Children Act and the accompanying regulations indicated clearly that the Act was intended to limit a school's right to expel handicapped students. The court noted that neither 20 U.S.C. § 1415 nor any of the accompanying regulations provide for the expulsion of handicapped students. Moreover, schools were not to expel students whose handicaps caused them to be disruptive. Instead, the schools were to appropriately place these students in a more restrictive environment. Therefore, the court concluded that a handicapped child could not be expelled if his handicap caused his disruptive behavior.

Like the courts in *Turlington* and *Stuart v. Nappi*, however, the court in *Koger* did not hold that the Handicapped Children Act prohibits the disciplining of disruptive handicapped children. The court noted that 20 U.S.C. § 1415 does not prohibit the expulsion of handicapped children. The court stated:

> For an appropriately placed handicapped child, expulsion is just as available as for any other child. Between a handicapped child and any other child, the distinction is that, unlike any other disruptive child, before a disruptive handicapped child can be expelled, it must be determined

whether the handicap is the cause of the child's propensity to disrupt. *Doe v. Koger*, 480 F.Supp. at 229.

The court concluded that the Handicapped Children Act's change of placement procedures should be followed in determining whether the child's handicap caused the disruptive behavior.

In *Sherry v. New York State Education Dept.*, 479 F.Supp. 1328, the plaintiff was a legally blind, deaf student who suffered from brain damage and an emotional disorder which caused her to act in a self-abusive manner. As a result of this self-abusive behavior, she was hospitalized and subsequently suspended indefinitely from the New York State School for the Blind. The court held that the indefinite suspension was a change of educational placement within the meaning of the Handicapped Children Act. The court relied upon the comment in 45 C.F.R. § 121a, the same comment which the *Stuart v. Nappi* court found persuasive. However, the court in *Sherry* concluded that the regulation did not permit the procedural protections of 20 U.S.C. § 1415 to be ignored when a temporary, emergency response to a handicapped student's behavior becomes a change in placement.

In this case, the defendants argue that Kentucky's expulsion statute, Ky.Rev.Stat. § 158.150, applies with equal force to handicapped and non-handicapped children. Specifically, they argue that the holdings in *Turlington; Doe v. Koger; Stuart v. Nappi*; and *Sherry* create a double standard for student conduct. Handicapped children will be entitled to commit disruptive acts with impunity while a non-handicapped child would be punished for the same action. We disagree. We adopt the analysis contained in *Turlington*. Accordingly, we hold that an expulsion from school is a change in placement within the meaning of the Handicapped Children Act.

Under the *Turlington* analysis, a handicapped child is not totally immunized from disciplinary action by the Handicapped Children Act, Section 504, or supporting case law which holds that an expulsion is a

change in placement. First, it is well-settled that a handicapped child may be suspended temporarily without employing the procedures in 20 U.S.C. § 1415. *Stuart v. Nappi,* 443 F.Supp. at 1242; *Sherry,* 479 F.Supp. at 1337; *Doe v. Koger,* 480 F.Supp. at 229. Second, as long as the procedural protections of 20 U.S.C. § 1415 are followed, a handicapped child may be expelled in appropriate circumstances. *Turlington,* 635 F.2d at 348; *H. R. v. Hornbeck,* 524 F.Supp. 215, 219 (D.Md.1981); *Doe v. Koger,* 480 F.Supp. at 229. A handicapped child may not be expelled, however, if his disruptive behavior was a manifestation of his handicap. *Turlington,* 635 F.2d at 348; *Doe v. Koger,* 480 F.Supp. at 229. Moreover, even during the expulsion period there may not be a complete cessation of educational services. *Turlington,* 635 F.2d at 348. Therefore, handicapped children can generally be disciplined in the same manner as nonhandicapped children. Only the procedural safeguards for removing a handicapped child are affected by our conclusion that an expulsion is a change in educational placement within the meaning of the Handicapped Children Act.

The defendants contend that this approach to disciplining handicapped children creates an artificial distinction between expulsions and suspensions. We disagree. Requiring state and local officials to follow the procedural protections of 20 U.S.C. § 1415 for expulsions, but not suspensions vindicates two important policy interests. First, school officials still retain the authority to control violent or anti-social behavior of handicapped children. These students may be suspended temporarily as long as

they receive the procedural protections of *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).[9] Second, one of the principal features of the Handicapped Children Act is the concept of individualized educational planning for handicapped children. This concept would be eviscerated if school officials could expel handicapped children using traditional expulsion procedures. Following the procedures of 20 U.S.C. § 1415, however, preserves individualized education planning for the handicapped child. The AARC can address the important questions of whether the child's disruptive behavior is a manifestation of his handicap and whether the child's educational placement should be changed. Consequently, our holding that an expulsion is a change of placement within the meaning of the Handicapped Children Act strikes a delicate balance between the special educational needs of handicapped children and the need of school officials to discipline disruptive children. Accordingly, we affirm the well-reasoned judgment of District Judge William O. Bertelsman.

---

**9.** In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that students facing a 10-day suspension for disciplinary reasons have property and liberty interests under the due process clause of the Fourteenth Amendment. Accordingly, the court held that "due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581, 95 S.Ct. at 739. The court noted that "[t]here need be no delay

between the time 'notice' is given and the time of the hearing". *Id.* at 582, 95 S.Ct. at 740. As a general rule, however, "notice and hearing should precede removal of the student from school." *Id.*

The Due Process Clause also applies to expulsions of students from tax-supported educational institutions. *See Goss v. Lopez,* 419 U.S. at 576 n.8, 95 S.Ct. at 737 n.8, and the cases cited therein. Therefore, handicapped children have a constitutional right to procedural due process independent of the due process rights provided in the Handicapped Children Act.