SCHOOL BOARD OF THE COUNTY
OF PRINCE WILLIAM,
VIRGINIA, Plaintiff,

v.

Jerry F. MALONE, et al., Defendants.

Civ. A. No. 83–0862–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 5, 1984.

Kathleen S. Mehfoud, John A. Gibney, Lacy & Mehfoud, P.C., Richmond, Va., for plaintiff.

Gerard S. Rugel, Joint Advocacy Coalition for the Mentally Disabled, Falls Church, Va., for defendants.

MEMORANDUM OPINION

BRYAN, Chief Judge.

This action is before the court on a request for review pursuant to 20 U.S.C. § 1415(e)(2) and (4) (1978), provisions of the Education for All Handicapped Children Act of 1975 (EAHCA or the Act). The defendants, in defending the request for review rely in part on § 504 of the Rehabilitation Act of 1978, 29 U.S.C. § 794. In view of its resolution of the matter under the EAHCA, the court does not reach the § 504 issue.

The parties have entered into a comprehensive Stipulation of Uncontested Facts which is attached as Appendix A.

The case arises from the attempted expulsion, in February and March, 1983, of Jerry F. Malone, a fourteen year old handicapped child, because of charges against him relating to the distribution of drugs. Jerry is handicapped because he suffers from a learning disability which, while leaving him intellectually unimpaired,[1] manifests itself as a severe difficulty in the comprehension and analysis of what he sees, reads and is told, and difficulty in the organization of spoken and written language. He is enrolled in the Prince William County School system in a self-contained learning disability class under Individual Educational Plans (I.E.P.'s) which all parties agree are appropriate for him. Indeed, the School Board's testimony indicates he is doing quite well under his I.E.P.

Jerry and his parents do not contend that he may not be disciplined, even suspended, for infractions of school regulations. They contend, however, that an expulsion is a change of placement triggering the procedural and review protections of the EAH-

---

1. The testimony indicates Jerry is functioning at an intellectual level of "borderline to low aver- age" (Tr. p. 143, 5/2/83 hearing).

CA. *Stuart v. Nappi*, 443 F.Supp. 1235 (D.Conn.1978). The plaintiff, School Board of the County of Prince William, Virginia (the School Board), although it is the party invoking the court's jurisdiction under 20 U.S.C. § 1415(e), in response to the court's expressed concern whether the EAHCA contemplated court review of this sort of state decision, seemed to question whether the court had jurisdiction in this type of expulsion case. The irony of this, from the School Board's viewpoint, is that if the court lacks jurisdiction, the School Board is left with a final decision of the Virginia Department of Education whose hearing officer, on May 28, 1983, in overturning the School Board's decision to expel, found that "Jerry's involvement in the sale of drugs was related to his handicapping condition." On the School Board's petition for review, that hearing officer's determination was upheld on July 25, 1983. The court concludes that it has jurisdiction. *S–1 v. Turlington*, 635 F.2d 342, 348 (5th Cir.1981).

Prior to the hearing officers' decisions the principal of Jerry's school, Rippon Middle School, had, because Jerry was a special education student, referred the matter to the Rippon Local Screening Committee (the Committee) to determine whether there was a causal connection between Jerry's handicapping condition and his involvement in the sale of drugs. That Committee was composed of knowledgeable persons, including professionals, involved in the classification of handicapped children and the provision of special education services. It determined, on February 23, 1983, that there was no such causal relationship (Pl. ex. 51). That finding was concurred in by the Coordinator of the Secondary Learning Disability Program for the Prince William County schools (Pl. ex. 52). Jerry was suspended from school from February 18, 1983 through February 28, 1983 and placed on furlough, with his parents' consent, as of March 1, 1983. On February 26, 1983, the school principal had recommended that Jerry be expelled, and on March 16, 1983 a hearing was held on this recommendation, at which Jerry, one of his parents and their counsel were present. Following that hearing the School Board voted to expel

Jerry. The Malones appealed that decision, resulting in the actions favorable to them by the State Board of Education which are described in the preceding paragraph. It is from those decisions that the School Board sought relief in this court pursuant to 20 U.S.C. § 1415(e).

Jerry was reinstated in school on April 18, 1983, and remains enrolled as of now.

At the hearing before this court on February 27, 1984, the parties adduced additional evidence, and there was presented the administrative record of the exhibits before the School Board at its March 16, 1983 hearing and the transcripts of hearings before the local hearing officer on May 2 and 10, 1983, and before the state reviewing officer on July 13, 1983. The court has now considered the administrative record as well as the additional evidence, including the deposition of Dr. Richard B. Hall.

\* \* \*

The inquiry of the court is twofold. "First, has the State complied with the procedures set forth in the Act? . . . . And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Bd. of Ed. of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 206–207, 102 S.Ct. 3034, 3050–51, 73 L.Ed.2d 690 (1982) (footnotes omitted).

There is no question concerning the first of the inquiries. While the Malones in their answer assert that they had no notice or opportunity to be heard before the Committee, they were given these rights, and they and their counsel were heard before the School Board and at each of the hearings before the local hearing officer and the state reviewing officer. Indeed the process which they were afforded resulted in the administrative ruling in their favor which is the subject of the instant action for review.

The situation of an expulsion does not fit into the *Rowley* court's second inquiry in a completely comfortable manner, but there is no question that the I.E.P. developed,

and which under the administrative ruling will be continued, is reasonably calculated to enable Jerry to receive educational benefits. Expulsion will result in his receiving no public educational benefits. The "disruptive" child has been the subject of comment in the regulations, and a handicapped child's placement is considered inappropriate whenever the child becomes so disruptive that the "education of other students is significantly impaired." Comment, 34 CFR § 300.552.[2] Even such a determination, however, warrants a transfer to a more restrictive placement—not expulsion. Certainly it can be persuasively argued that allowing a child who is dealing in drugs to remain in school would significantly impair the education of other students, although there is no evidence that there has been a recurrence of the activity of January, 1983. But there is also no evidence that the alternative of a more restrictive placement was ever considered by the School Board, the principal or the Committee.

■ Turning to the factual issue before the court presented by the plaintiff, § 1415(e)(2) directs the court to "receive the records of the administrative proceedings, ... hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, ... grant such relief as the court determines is appropriate." The records have been received and considered and the additional evidence has been heard. The murkiness of the standard for review has been somewhat cleared by *Rowley*. There the Supreme Court concluded that the proper balance is for the reviewing court to give greater deference to the state's placement decision if the procedural requirements of the Act are met. *Rowley, supra* at 206, 102 S.Ct. at 3050; *see also Roncker v. Walter*, 700 F.2d 1058, 1062 (6th Cir.1983). Rejected was the notion that the "preponderance of the evidence" standard was an invitation to the court to substitute its own ideas of sound educational policy for those of the school authorities. Here the hearing

officers, selected by the State Department of Education as capable of resolving educational policy disputes, in thoughtful and well considered opinions in which all the relevant material was evaluated, have rejected the local School Board's determination that expulsion is an appropriate placement. And they have based that rejection on a factually founded determination that any drug dealing was causally related to the handicapping condition. Given that the procedural requirements were strictly complied with, deference should be given that determination.

■ Even without that deference, however, the additional testimony presented here persuades the court that expulsion was not appropriate, because not only was no alternative considered, but the behavior of Jerry was caused by his handicapping condition. The testimony of Dr. David Schostak, an expert in child psychology, as well as that of Dr. Richard Hall, is very convincing. Neither asserted that discipline, and even some suspension were not warranted in the case. Indeed they said discipline for the infractions was imperative. It has shown him, by the attention the incidents have attracted, that this is a major thing he must not do. He will not do it again, although there is no guarantee he will not do something else that is an infraction (Hall depo. at 25, 47, 48).

Although fourteen in chronological years, Jerry is operating at the level of a five or six year old. He was told; and fairly extensively, and expertly, instructed that drug use and drugs were forbidden. He could probably articulate an affirmative response if asked if drug use or drugs were wrong. But his very learning disability prevented him from comprehending or giving long term consideration to the consequences of his actions. A direct result of Jerry's learning disability is a loss of self image, an awareness of lack of peer approval occasioned by ridicule or teasing from his chronological age group. He

---

**2.** In the Comment to 34 CRF § 300.513 the subject of a child who is endangering himself or others is mentioned, indicating that the public

agency is not precluded from using its normal procedures, other than a change in placement, in dealing with such a child.

can't keep pace with these peers. He is ostracized from their group. He doesn't understand their language. These emotional disturbances[3] make him particularly susceptible to peer pressure. Under these circumstances he leaps at a chance for peer approval. He is a ready "stooge" to be set up by peers engaged in drug trafficking. That is what happened here—the incidents involved Jerry's acting as a "go between" for drugs at the request of two females.[4]

That the infractions stemmed from the learning disability is established to the court's satisfaction by at least a preponderance of the evidence.

The School Board argues that it faces a real dilemma if it is unable to expel a student, even a handicapped one, who violates the regulations, particularly with regard to drugs. But aside from its own hierarchy having disagreed with it on this particular case, there are alternatives short of expulsion that can be explored. As indicated, the Malones do not assert that Jerry cannot be disciplined, even suspended, for infractions. A more restrictive placement, with a changed IEP,[5] could have been explored.

In light of the foregoing, judgment will be entered in favor of the defendants; and the complaint dismissed.

The court has received an objection to the deposition of Richard B. Hall. The objection to the relevancy of the testimony of Dr. Hall to the extent that it undertakes to establish an independent handicap for emotional disturbance is sustained, although the emotional disturbance as an outgrowth of his learning disability the court feels is relevant, and the testimony of Dr. Hall on Jerry's emotional disturbance is admitted for that purpose. The objection on the basis of the relevancy to the opinion of Dr. Hall with regard to Jerry as he appeared on November 18, 1983 is overruled since the testimony at trial indicated no substantial change since February and March, 1983.

## ORDER

For the reasons set forth in the Memorandum Opinion this day filed, it is hereby

ORDERED that judgment is entered in favor of the defendants, Jerry F. Malone, Verda J. Malone and Robert A. Malone, against the plaintiff, School Board of the County of Prince William, Virginia; and this action is dismissed.

## APPENDIX A

### Dec. 15, 1983

*JOINT STIPULATIONS OF UNCONTESTED FACTS*

The parties hereto, through their respective counsel, enter into the following stipulations reserving the right to object to the relevancy or materiality of any facts or exhibits to which they have stipulated.

1. The plaintiff School Board of Prince William County, Virginia ("School Board") is responsible under state law for the supervision of the Prince William County Public Schools, including, *inter alia*, the suspension and expulsion of students. The School Board has its office in the County of Prince William, Virginia.

2. Defendant Jerry F. Malone ("Jerry") is a resident of Prince William County, Virginia, and a student in the Prince William County Public Schools.

3. The defendants Robert A. Malone and Verda J. Malone are residents of

---

3. The defendants sought to establish Jerry's emotional disturbance as an independent handicapping condition. The court restricted the evidence to emotional disturbances resulting from the learning disability, since it was this that the School Board had considered in making its decision.

4. There is a conflict in the testimony on the degree of culpability of Jerry in the drug instances. Testimony indicating culpability comes mainly from the principal, Ronald Keel-

er (5/2/83 hearing, pp. 131–133). The hearing officer resolved this conflict in favor of finding that Jerry was no more than a "go between." The court's reading of the transcripts of the hearings persuades it to the same conclusion.

5. Jerry's present IEP addresses his behavioral problem (Pl. ex 49, p. 7), of which he has had his share. These were, however, not the basis for the action of the School Board.

Prince William County, Virginia, and are Jerry's parents.

4. The School Board receives federal financial aid pursuant to the Education of the Handicapped Act 20, U.S.C. § 1401 *et seq*. As such, plaintiff is responsible for the provision of special education services pursuant to the Education of the Handicapped Act 20, U.S.C. § 1401 *et seq*. ("EHA"). Section 504 of the Rehabilitation Act of 1973 ("§ 504") also applies to the School Board.

5. The School Board has provided Jerry with a free appropriate public education in the Prince William County Public Schools.

6. Jerry is a fourteen year old handicapped child who has been receiving services for a learning disability.

7. These special education services were provided pursuant to Individual Education Programs ("IEP's") which specified the program of special education services to be given Jerry and the location at which the services were to be provided.

8. Either Mr. or Mrs. Malone consented to each IEP developed for Jerry by the School Board.

9. Pursuant to the IEP developed for him, Jerry was in a self-contained classroom for the learning disabled at the School Board's Rippon Middle School at the beginning of the 1982–83 school year. On February 17, 1983, the principal of the school learned that Jerry, together with some non-handicapped students, had been involved in the illegal distribution of drugs in the school. When confronted with this information, Jerry admitted to the principal that during January, 1983 he distributed illegal drugs on three occasions on school property and during the school day. Jerry also signed a statement to this effect.

10. Because Jerry was a special education student, this matter was referred to the Rippon Local School Screening Committee ("Committee") to determine whether there was a causal connection between Jerry's handicapping condition and his involvement in the sale of illegal drugs. The Committee was composed of a number of professionals involved in the identification of handicapped children and the provision of special education services. Serving on the Committee were a learning disability teacher, a school psychologist, a visiting teacher and an administrator.

11. The administrator on the Committee was Edward L. Norris, an Assistant Principal at Rippon Middle School. Mr. Norris has 22 years experience in education with the Prince William County Public Schools, including 11 years experience as a classroom teacher and 11 years as an administrator. Mr. Norris is endorsed by the State of Virginia as a Secondary Principal and Physical Education teacher. He holds a Masters of Education from the University of Virginia. Mr. Norris is Chairman of the Local School Screening Committee which considered Jerry's case and had been chairman for five years. Mr. Norris knew Jerry personally and was familiar with his Category II file.

12. The teacher of the learning disabled who served on this Committee was Henrietta Huising. Ms. Huising has a degree in education from Southwestern University in Texas and has taught learning disabled children for four years. Ms. Huising is endorsed by the State of Virginia in learning disabilities. Ms. Huising knew Jerry personally and was familiar with his Category II file.

13. The School Psychologist serving on the Committee was Carolyn Uttaro. Ms. Uttaro had four years experience as a school psychologist and has 1½ years teaching experience. Ms. Uttaro graduated from Mississippi State University with a degree in psychology and education. Ms. Uttaro was familiar with Jerry's Category II file.

14. The Visiting Teacher serving on the Committee was Curtis Elam. Mr. Elam has 31 years experience in education in Prince William County, including 27 years experience as a visiting teacher. He is endorsed as a Visiting Teacher by the State of Virginia. Mr. Elam has 75 credit hours of education beyond his college degree. Mr. Elam spends 80% of his time involved in the special education process, including serving on the Local School Screening Com-

mittee and assisting in the preparation of the sociological evaluations. Mr. Elam knew Jerry personally, had visited him in his home, and was familiar with Jerry's Category II file.

15. This Committee reviewed the charges against Jerry relating to the distribution of drugs.

16. The Committee met on February 23, 1983, and determined that there was no causal relationship between Jerry's handicapping condition and his involvement in the sale of drugs. This finding is contained in a report which is part of the record.

17. The Coordinator of the Secondary Learning Disability Program for the Prince William County Public Schools also reviewed the matter and concluded that there was no relationship between Jerry's handicapping condition and his involvement in the sale of drugs. Her report is a part of the record.

18. The Coordinator was Kathy LaScala whose qualifications are set forth in pages 149 to 151 of the transcript of the May 2, 1983 local due process hearing.

19. Available to the Committee at its meeting on February 23, 1983, were Jerry's past discipline record and his Category II file. The Category II file contains all psychological, educational, medical and sociological evaluations, annual review reports, IEPS, permission forms, and includes informal reports and observations from classroom teachers.

20. Evidence regarding the charges against Jerry was presented to the Committee by Ronald Keeler, Principal of Rippon Middle School.

21. Prior notice of the Committee meeting on February 23, 1983, was not given to Mr. or Mrs. Malone. Mr. and Mrs. Malone were not invited to attend, nor did they attend the Committee meeting.

22. Mr. and Mrs. Malone were not advised following the February 23, 1983, meeting of their right to appeal the decision of the Committee.

23. Mr. and Mrs. Malone had been advised previously of their rights under Public Law 94–142. These rights were given to them in writing at the signing of each IEP and at each year-end review and were printed on these forms.

24. Jerry was suspended from school as of February 18, 1983 through February 28, 1983.

25. The Prince William County Public Schools requested that Jerry be placed on furlough ("leave") from school as of March 1, 1983 and his parents consented.

26. Homebound instruction was given to Jerry by the Prince William County Public Schools three times on March 11, 14 and 15, 1983 for two hours each day.

27. On February 26, 1983, Mr. Keeler recommended that Jerry be expelled from the Prince William County Public Schools. The School Board held a hearing on the recommendation on March 16, 1983, which hearing was attended by both Mr. Malone and Jerry. Jerry again admitted to the School Board his involvement in the distribution of drugs. Following the hearing, the School Board voted to expel Jerry from its schools.

28. Pursuant to the advice of legal counsel, by letter dated April 8, 1983, the defendants requested a due process hearing regarding the expulsion pursuant to The Education of the Handicapped Act and the Virginia special education statutes and requested reinstatement. A copy of that letter is attached as Exhibit 1.

29. Jerry was reinstated in school on April 18, 1983 pending the exhaustion of administrative remedies.

30. A local due process hearing was held on May 2 and 10, 1983. The local hearing officer ruled in favor of Mr. and Mrs. Malone. His report is part of the record.

31. A state review proceeding was held at the request of the School Board on July 13, 1983. Additional testimony was presented by the School Board.

32. On July 25, 1983, the state reviewing officer held against the School Board.

33. Exhibit 2 attached is the record of the administrative proceedings.

34. Exhibit 3 attached is the Prince William County Public Schools Code of Student Conduct.

35. Exhibit 4 attached is the School Board regulations regarding expulsion of students for conduct involving drugs.

SCHOOL BOARD OF THE
COUNTY OF
PRINCE WILLIAM, VIRGINIA
/S/ Kathleen S. Mehfoud
By
Counsel
/S/ Gerard S. Rugel
By
Counsel

EXHIBIT 1

**Joint Advocacy Coalition For The Mentally Disabled**

100 N. Washington St.

Suite 205

Falls Church, Va. 22046

703–532–3303

Association for Retarded Citizens of Northern Virginia

Legal Services of Northern Virginia

Mental Health Association of Northern Virginia

April 8, 1983

Ms. Kathleen S. Mehfoud

Mehfoud & Lacy

P.O. Box 584

Richmond, VA 23205

Dear Ms. Mehfoud:

On behalf of Jerry Malone we are requesting that a due process hearing be scheduled so that we may contest his expulsion and consequent "change of placement." This request is made pursuant to P.L. 94-142, 20 USC 1415(b)(i)(c), (D); 34 CFR 104.-36, 300.504(a); .504(b)(i)(ii), as well as applicable Virginia laws and regulations.

It is our position that the behavior for which Jerry was expelled is related to his handicapping condition. Therefore, he continues to be entitled to special education services in the least restrictive environment. Furthermore, the school board's refusal to allow Jerry to continue in his present placement violates his right to remain in his current placement during the pendency of the due process proceedings referred to above (20 USC 1415(e)(3), 35 CFR 300.513).

Our position is fully supported by the case law in this area, most recently in the case of *Kaelin v. Grubbs* 4 EHLR 554.115 (US Ct of Appeals, 6th Circuit, 7/9/83, see also: *S1 v. Turlington* 635 F.2d 345 (5th Cir Cert denied — US —, 102 S.Ct. 566 (1981); *Stuart v. Nappi* 443 F.Supp. 1235 (D.Conn, 1978); *Sherry v. NYS Education Dept.*, 479 F.Supp. (328 (W.D. NY 1979); and *Doe v. Koger* 480 F.Supp 225 (N.D.Ind 1979).

We are formally requesting that Jerry Malone be permitted to return to his present classroom placement immediately, obviating any need to institute litigation in this matter.

Sharing in United Way of
the National Capital Area

We have attempted to secure Jerry's records directly through the school system. They have advised us to make this request to you directly. Please forward to me the record of the expulsion hearing held in March. I would also appreciate your direction to the school system that either myself or Rhonda Buckner, my assistant, be permitted to review and copy Jerry Malone's educational record.

Sincerely,

/s/ Gerard S. Rugel

Gerard S. Rugel

Counsel

EXHIBIT 3

# Code of Behavior

## Prince William County Public Schools

# School Board

Gerard P. Cleary, Chairman
Woodbridge District

George P. Mullen, Vice Chairman
Brentsville District

Jack T. Combs, Jr.
Coles District

Regis R. Lacey
Neabsco District

Michael C. O'Donnell
Gainesville District

Ilona H. Salmon
Occoquan District

Jayne M. Speck
Dumfries District

Richard W. Johnson
Division Superintendent

# Table of Contents

Preamble . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Responsibilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rules and Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Corrective Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Discipline Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# Preamble

Respect for the dignity and the worth of the individual is the basis for laws by which the United States Government was first established. Since the public school system is created by that government for the enlightment and the training of its youth, it becomes necessary that laws governing the appropriate conduct of the young be understood by all members of the school community-- students, faculty, administrators, and parent(s)/ guardian(s)--and that all share in the responsibility to support the rules of the school.

It is the duty of the parent to train the child to assume reponsibilities in the school environment-- responsibility for learning and exhibiting conduct that does not infringe upon the rights of another. The school has the right to expect reasonable and self-disciplined behavior from each student. Since self-discipline cannot be imposed from without, the students must be permitted a degree of freedom of choice and action to develop their individual talents and abilities.

Conversely, the school must seek to protect the rights of all young persons to an education commensurate with their abilities, interests, values, and goals. The school must provide safeguards for the health, safety and rights of the individual students without discrimination on the basis of race, religion, sex, national origin, or economic status.

Whenever students feel that the best interests of the individual or of the group have been disregarded, a conference with the teacher, sponsor, coach or counselor should be arranged. If a routine agreement cannot be effected among student(s), teacher(s) and counselor, then the student has the right to:

- Arrange a meeting with the principal or the designated assistant principal to discuss such conditions or decisions judged by the student(s) to be detrimental,
- Request a conference of parent(s)/ guardian(s), student and principal if not satisfied with initial meetings,
- Appeal through the appropriate chain of command if conferences are not satisfactory at the local school level; and it shall be the responsibility of the principal to inform parent(s)/guardian(s) of the appeal procedure.

The provisions of this **Code of Behavior** apply whenever students are involved, such as:

- School activities on property owned by the School Board,
- Travel on school buses,
- Off-site school-sponsored activities, i.e. field trips,
- On- or off-site school-related problems which are the result of disruptive behavior at school.

The Superintendent may, for good cause, approve a deviation from the procedures set forth in the **Code of Behavior** in its present form, so long as the basic rights of students, parent(s)/ guardian(s), the community at large and/or school personnel are not violated.

3

# Responsibilities

## Prince William County School Board

The **Code of Behavior** has been established for the Prince William County public schools. The School Board, acting through the Superintendent, holds all school employees responsible for supervising student behavior while students are legally under the supervision of the schools. In addition, the School Board holds all students responsible for appropriate conduct as defined in the Prince William County **Code of Behavior**. Policies and references within the **Code of Behavior** can be found in the Prince William County Policy Manual available at each school and are consistent with the **Virginia School Laws**.

## Educational Team

While discipline is ultimately the responsibility of the individual, the implementation of an effective discipline program requires a cooperative team effort. Whenever possible, a preventive approach to discipline shall be taken in an effort to clarify standards of conduct, effectively assess a student's individual needs, and identify any significant factors which may be contributing to a student's misconduct.

The school principal is the instructional leader responsible for the development of a local school handbook which is consistent with the **Code of Behavior**. Administrators, teachers and support personnel all work together to insure the rights of each student in the school system.

The educational team is responsible for:

- Providing an orderly school environment,
- Providing a favorable psychological environment for learning,
- Encouraging self-discipline,
- Providing an atmosphere of mutual respect,
- Treating each student as an individual in accordance with one's needs,
- Encouraging and evaluating the progress of students,
- Initiating and attempting to open communication with parents,
- Discussing the **Code of Behavior** with students at the beginning of each school year,
- Formulating and implementing school rules and regulations in compliance with the **Code of Behavior** throughout the school setting,
- Disseminating the local school handbook and the **Code of Behavior** at the beginning of each school year to all students and interested community groups,
- Providing both documents to each new student upon registration throughout the school year,
- Developing a plan of action, whenever possible, based on the needs of the student and the school environment as a whole.

## Parent(s)/Guardian(s)

It is the duty of parent(s)/guardian(s) to:

- Teach the student to assume responsibility for learning and for conduct that does not infringe upon the rights of others,
- Insure the student's regular attendance in school,
- Provide encouragement and discipline aimed at motivating the student towards responsible behavior and participation within the school setting,
- Insure that their child is appropriately dressed for school as determined by the dresscode which is developed cooperatively at local schools by students, parent(s)/guardian(s) and school staff, (Pupils who come to school without proper attention to personal cleanliness or appropriateness of dress may be sent home to be properly dressed for school.)
- Provide such books, materials, instruments, uniforms and equipment as are required for effective participation in the school program,
- Provide emergency information to the school to insure that the school will have immediate contact with parent(s)/guardian(s) in case of an emergency.
- Provide the student's birth certificate, physical examination, and record of the completed series of immunization, as required by the **Code of Virginia**, upon initial entry to school.

4

## Students

Students are responsible for:

- Appropriate conduct in compliance with the **Code of Behavior,**
- Accepting responsibility for learning, developing adequate study habits, and completing class assignments and/or requirements,
- Regular school attendance,
- Contributing to a climate of acceptance and mutual respect within each school so that the hopes and ambitions of all individuals may be realized,
- Maintaining an atmosphere in which learning and extracurricular activities can take place for the growth and pleasure of everyone involved,
- Care and wise use of school supplies,
- Strict compliance with any rules or regulations of the local school, the County School Board or the state and federal government,
- Knowing and adhering to the **Code of Behavior,**
- Reimbursement to the School Board for any actual breakage or destruction of property owned by or under the control of the School Board done by such pupil in the pursuit of his studies.

5

# Rules and Regulations

A basic element to effective prevention of misconduct is the setting of county-wide school rules which are implemented in a consistent manner. The following is a summarization of the established standard of conduct for Prince William County Schools. (See Discipline Code in Appendix I)

**Disruption** - No student, while on school property, shall behave in a disorderly manner or in any other way interrupt or disturb the orderly operation of the school.

**Profanity** - No student shall curse or verbally abuse anyone by the use of vulgar or indecent language; nor shall any student be subjected to such abuse from any source.

**Cheating** - Students are responsible for neither giving nor receiving assistance on tests, examinations, final evaluations or class assignments that are to be graded as the work of a single individual. Cheating shall include other expressions of dishonesty.

**Plagiarism** - Students are responsible for giving due recognition of sources from which material is quoted, summarized or paraphrased as well as to persons from whom assistance has been received.

**Fighting** - Students are responsible for settling such confrontations that may arise in a peaceable manner and without the use of violence.

**Drug and Substance Abuse** - The possession, distribution or use of illegal drugs, intoxicants, or drug paraphernalia while under the jurisdiction of the school is expressly forbidden.

**Gambling** - Gambling on school property is strictly prohibited.

**Truancy** - Students are responsible for attending school regularly, and attendance is compulsory until the age of seventeen. In case of absence, students must bring a written statement to school by the second day of return to school. The written statement must give the reason for the absence and be signed by a parent or guardian. Classwork for excused absences may be made up, but the student must meet with the teacher to obtain the assignments.

**Types of Excused Absences are:**
- Personal illness of the student,
- Medical and dental examination and/or treatment of the student when such appointments cannot be scheduled other than during school hours,
- Student participation in school sponsored activities taking place during school hours,
- Death in the family of the parent or guardian,
- Emergency conditions in the student's home which require special help from the student in caring for the sick or injured; however, regular use of this excuse or requests for absences for an extended period of time should be referred to the Pupil Personnel Office for evaluation.
- Trips taken by an entire family when required because of caring for children, particularly if the trip is construed to be of educational value and could be made a part of the instructional program,
- Reasons of extenuating circumstances to be judged by the principal. Parents may appeal the principal's judgment along the organizational line of the school system. Final appeal would be addressed to the School Board only after having exhausted all appeals at the various administrative levels.

**Vandalism** - No student shall maliciously or willfully damage, deface, or destroy school property or personal belongings of others.

**Possession of Weapons** - The possession of any type of weapon such as firearms, knives, switchblades, fireworks and other explosives is forbidden.

**Smoking** - Students are not permitted to smoke on school buses or in school buildings. Students in grades 9-12 who have on file with the principal a permission signed by the parent(s)/guardian(s) or by adult student may smoke in one or more designated outdoor areas. Students in the elementary and middle schools will not be permitted to smoke under any circumstances.

**Theft** - Depriving or attempting to deprive another of personal property is expressly forbidden.

# Corrective Measures

In the event that a school staff member refers a student to the principal for disciplinary action, the Discipline Referral Form shall be filled out and signed prior to any action being taken by the principal. The principal in turn is responsible for completing the form and indicating in writing the disciplinary action which has been taken. Situations may also arise of an emergency or immediate nature where a principal or assistant principal will take disciplinary action prior to the completion of the Discipline Referral Form. In these cases, as a matter of record, a Discipline Referral Form shall also be completed following the incident.

Students' failure to comply with school rules and regulations may result in the school taking one or more of the following actions:

**Parent Conferences** - Parent conferences are held in an effort to clarify student behavior and seek help and cooperation from the parents,

**Detention** - Detention is held before a student's first scheduled class or following the last scheduled class for a reasonable amount of time. Consideration shall be given to other obligations of the student when detention is applied, and parent(s)/guardian(s) shall be notified of the extension of the student's schedule.

**Local School Probation** - Disciplinary probation shall be considered a prime correctional measure for minor and infrequent offenses. Copies of all discipline referrals resulting in probation shall be sent to the parent(s)/guardian(s). The principal shall specify on the Discipline Referral Form the reason(s) for and the length of the probationary period.

**Non-participation in School-sponsored Activities** - Restriction of this manner will be set for a fixed period of time or until certain specified requirements have been met. These events apply to activities held prior to, during, or after the regular school day.

**No Trespassing Order** - In extreme cases, when directions of school personnel have been disregarded, a no trespassing order may be issued by the appropriate authorities.

**"Time-Out" Situation** - A student may be removed from the assigned class or classes to pursue independent study in a "time-out" situation for a special period or until certain conditions have been satisfactorily met. The school shall assist the student by providing instructional assignments or by making other special arrangements. The parent(s)/guardian(s) should be notified if this corrective measure must be imposed in excess of a reasonable number of times.

**Corporal Punishment** - Corporal punishment shall be administered by the school principal or assistant principal, and an adult staff member shall witness this action. Before punishment is administered, except in cases of obvious miscounduct, the reason for the punishment shall be explained to the student(s) and the student(s) shall be given a chance to present their side of the event.

**In-school Suspension** - In-school suspension, where programs are available, shall be considered an alternative disciplinary action for selected cases. Parent(s)/guardian(s) shall be notified of the temporary change in the student(s) schedule and the reason for this action.

**Out-of-school Suspension** - A student may be suspended from school for sufficient cause and for a specified period of time.

**Court Action** - A student's failure to comply with county or school regulations and/or requirements of law, may result in the schools taking court action.

**Expulsion** - A student, for sufficient cause, may be permanently denied the right to attend Prince William County Schools.

## Suspension Procedures

Suspension is an attempt to bring the school and the home together for the purpose of solving the behavioral problem that is present. Conduct currently viewed as just cause for suspension shall include, but not be limited to, any one of the offenses listed in the Discipline Code on page 10. The Superintendent may for good cause approve or ratify deviations from these procedures in such situations.

A principal or assistant principal is authorized to suspend a student for five school days or less for a single incident. Suspensions cannot be set for an indefinite period of time.

Students shall be informed of any charges as well as the evidence and shall be given the right to present their side of the event. The principal may require the presence of a third party during the questioning and a record may be kept of the discussion. The innocence of the student should always be assumed until the evidence proves otherwise.

In cases where the suspension is determined to be necessary, the parent(s)/guardian(s) shall be notified as soon as possible. The student and parent(s)/guardian(s) shall be informed of their right to appeal. A letter outlining the cause for suspension and the procedure for appeal shall be sent to the home of the student no later than the day following the suspension of the student. The principal shall make arrangements for the student to be transported home. Out-of-school suspensions are considered unexcused absences and students will not be allowed to make up any work missed during the suspension time.

In cases where an adult student or a student's parent(s)/guardian(s) notifies the principal at the time of the suspension that there will be an appeal, the student shall be allowed to continue in school on a regular basis until the case is heard, unless the principal considers that the presence of the student in the school creates a present and continuing threat to the health, safety and/or welfare of persons or property in the school.

If after the case is heard, and the appeal has been found in the student's favor, then the appellant shall be allowed to make up all work missed. If the student remains in school while awaiting the appeal hearing, and the appeal is found in favor of the principal, then the student will serve his full suspension beginning the next school day after having received notice of the decision.

If a suspension of more than five days is requested, it must be approved by the appropriate director, and it must be for a specified number of days.

If a suspension of more than ten days is requested, it must also be approved by the appropriate director, and it must be for a specified number of days. In this case, a pre-suspension hearing shall be held by the director. The parent(s)/guardian(s) shall be notified of the time and place of the hearing at least three days prior to the hearing. The student may be represented by the parent(s)/guardian(s) or by legal counsel, a social worker, minister, etc. An informal record shall be kept of the proceedings. The written decision of the director shall be delivered to the parties within three days after the hearing. The decision of the director shall be subject to the same appeal proceedings as are suspensions of a lesser duration.

If a student has been suspended for a total of fifteen days within a school semester, any additional suspension shall require a review of the student's record by the appropriate director. The principal shall provide information in regard to any earlier suspensions as well as the circumstances surrounding the present offense and state what has been done to help the student in the past. The director will make a recommendation in writing to the principal, and a copy of the report shall be sent to the parent(s)/guardian(s) of the student.

## Expulsion Procedures

A student may be permanently denied the right to attend any Prince William County school when:

- The individual is a potential danger to the health, welfare and/or safety of others,
- The conduct of the individual infringes upon the rights of others to an education and/or prevents the learning activities of other students,
- There is an accumulation of offenses for which the student has been suspended, and/or
- Other circumstances are determined in which the expulsion of a student would be in the best interest of the local school or school division.

Furthermore, the illegal sale or attempted sale of drugs or alcohol on school property, at school functions or going to and from school shall result in expulsion. Other drug or alcohol related incidents may also constitute grounds for expulsion.

When a student's conduct is such as to require an expulsion recommendation to the Prince William County School Board, the principal shall conduct a hearing with the student and the parent(s)/guardian(s). A student does have the right to have an advocate present at the time of the hearing. Furthermore, the local school hearing shall be recorded and transcribed and a copy made available to the student and parent(s)/guardian(s) upon request.

Prior to recommended expulsion, every attempt should be made to use all appropriate school and community resources so that remedies other than expulsion have been explored. In addition, except for unusual situations, actions of the student for the current year only shall be considered in a recommendation for expulsion.

The principal, after the appropriate hearing procedures have been followed, and with the concurrence of the Instructional Administration Department, may suspend the student from school pending action by the School Board on the proposed expulsion. The written recommendation for expulsion shall be sent to the Superintendent or his designee. This recommendation shall include the facts supporting the request for expulsion.

At least five school days before the hearing is to take place before the School Board, the parent(s)/guardian(s) shall be notified by certified mail of the following:

- The reason(s) for the expulsion recommendation,
- The time and place of the hearing,
- That the student may be represented by parent(s)/guardian(s) or other responsible adult(s).

Parent(s)/guardian(s) may waive a hearing by notifying the School Board in writing that they do not desire to be heard and the expulsion will become effective after School Board action. The failure of the student or the parent(s)/guardian(s) or representative to appear for the hearing after being duly notified will not prevent the consideration of the evidence and the final resolution of the case, and such failure to appear will be considered a waiver of any right to a hearing.

Whenever a student under 18 years of age is expelled by the School Board, the principal shall contact the Welfare Department of the county, the court service unit of the Juvenile and Domestic Relations Court, or any other public agency or agencies in the county to determine if such agency can provide appropriate services to the student.

9

# Discipline Code

The philosophy of Prince William County Schools is directed toward a preventive approach to irresponsible behavior. If students are denied their opportunities to learn as a result of irresponsible behavior, the teacher, the principal and/or other appropriate educational staff members shall determine the proper corrective measure.

## Conduct currently viewed as just cause for Disciplinary Action shall include but not be limited to any one of the following violations:

- Use of profanity
- Academic dishonesty, to include cheating, plagiarisms, and forgery
- Fighting
- Possession, distribution or use of illegal drugs, intoxicants or paraphernalia
- Gambling
- Vandalism
- Possession of weapons, such as firearms, knives, explosives, fireworks, etc.
- Smoking on school buses, in the school building, or in unauthorized areas
- Leaving school grounds without permission
- Chronic failure to be prepared for class
- Violation of School Board Policy or school regulations
- Disrespect and/or disobedience to teachers or any other staff members
- Conduct dangerous to the physical well-being of others
- Physical or verbal assault
- Extortion, harrassment or intimidation
- Willful disruption of any classroom or school activity.
- Trespassing
- Any threat to bomb, to burn or to destroy in any manner a school building or other school property
- Violation of fire regulations to include lighting matches, false fire report, arson, or the lighting of any flame not a part of classroom instruction
- Failure to comply with school bus rules
- Tardiness and/or truancy
- Unauthorized sales or distributions
- Indecent exposure
- Inappropriate public behavior or display
- Theft

## Preventive and/or Corrective Measures currently at the disposal of School Administrators:

- Counseling and admonition
- Tasks assigned by the administration
- Time-out
- Corporal punishment - this shall be administered by the principal or assistant principal
- Local school probation
- Parent conferences
- Detention
- In-school suspension, suspension of student's privileges
- Expulsion
- No trespassing order
- Court action

## Notes:

**NOTIFICATION OF NON-DISCRIMINATION**

As required by federal laws and regulations, the Virginia Department of Education does not discriminate on the basis of sex, race, color, religion, handicapping conditions, or natural origin in employment or in its educational program and activities. Persons who have reason to believe they have been discriminated against may seek remediation through the regular appeal procedures. Inquiries may also be directed to:

Title IX Compliance Officer     or     Director of the Office of Civil Rights
Prince William County Schools          Department of Education
P.O. Box 389                           Washington, D.C.  20201
Manassas, Virginia 22110
(703) 791-3111

EXHIBIT 4

Regulation 735–1
STUDENTS
February 11, 1981

*STUDENTS*

*Illegal Drugs*

The approved *Code of Behavior for Prince William County Public Schools* states that "the possession, distribution or use of illegal drugs or intoxicants while under the jurisdiction of the school is expressly forbidden."

In addition to the requirements of policy, notice and other regulations, the following provisions shall be followed for all students involved in the use, possession, or distribution of illegal drugs, paraphernalia, or intoxicants:

I.  In all cases, parents/guardians shall be notified as soon as possible. In the event parents/guardians cannot be reached or cannot come to the school promptly, the principal or his designee is to represent the best legal interests of the student(s) involved as well as the interests of the total school and community.

II. Students involved in the possession/use of alcoholic beverages at school or who arrive at school under the influence of same, are subject to either suspension or expulsion from school. The illicit beverages may either be turned over to the parents/guardians or destroyed by the principal. A school witness shall be present in either case. Police representatives would normally not be contacted in these cases unless the student is disorderly, disruptive and/or a threat to the safety of others or property. In such instances, the police may be contacted and requested to assume custody. Parents/guardians are to be notified as soon as possible that their youngster is being placed in the protective custody of the police. Normally, however, these youngsters should be turned over to the parents/guardians and suspended from school.

The length of suspensions in these cases may vary from one day to the maximum allowable due to the nature and degree of involvement in each individual case. All student expulsion recommendations must be cleared by the appropriate Director (normally the Administration Director), prior to the principal informing parents/students of such a recommendation.

III. Students involved in the possession, use or distribution of illegal drugs and/or paraphernalia on school property, or who arrive at school under the influence of same, are subject to suspension and/or expulsion from school. A five-day suspension from school is required in all but very unusual and extenuating instances for all students using or in possession of such drugs or paraphernalia, or if these substances are found in a location clearly under the direct control of the student(s). The second such offense in the same school year will bring an automatic recommendation to the School Board for the expulsion from school of said student(s). An automatic recommendation for expulsion is also to occur the first time a student is involved in the distribution of illegal drugs or paraphernalia. Parents/guardians and the community resource officer are to be contacted as soon as possible. The student is to be suspended from school until such time as the School Board has a hearing on the expulsion recommendation. The principal is to contact the appropriate Director (normally the Administration Director), and work with that department in preparing all material and other matters for the parents/guardians and the School Board hearing. In any case of suspension or expulsion, the procedures required for such action must be consulted and followed.

A principal should conduct whatever investigation he deems reasonably necessary before making a final decision concerning whether a student has been involved in using, possessing, or distributing an illegal drug. This investigation shall be for school purposes only, and all prosecution shall be un-

dertaken by the appropriate authorities. If the investigation reveals facts and circumstances from which the principal can reach an immediate conclusion, he should act forthwith. Some examples include cases in which a student sells, distributes, uses or possesses material which the student has represented to be an illegal drug, cases in which the material can be identified with reasonable certainty by the principal or the authorities as an illegal drug, cases in which a student admits to the allegations, and the like. A principal may rely upon any source of information he considers to be reliable in reaching his conclusion, including information from students, teachers, or police authorities. If, however, the investigation reveals that there may be an innocent explanation for the simple use or possession of a substance, the principal should use discretion in determining whether to suspend or expel before the results of a police investigation or chemical analysis are received. The principal should in the interim take administrative action as necessary to prevent recurrence of the incident, as by forbidding the student from bringing unexplained substances to school, conferring with the parents/guardians, and so forth.

IV. The disposition of illegal drugs and/or paraphernalia that are involved in possession, use or distribution cases shall be dealt with as follows:

A. The school administrator or faculty members coming into possession of the above will contact the Community Resource Officer responsible for support to that particular school. The officer is to be fully briefed concerning the circumstances and will make the decision concerning prosecution. If the Community Resource Officer cannot be contacted, contact the Juvenile Bureau, Police Department. Attempts will be made to dispatch a member of the bureau to your location.

B. If no member of the Juvenile Bureau is available, the administrator or faculty member should take necessary action administratively, secure the contraband and turn it over to the Community Resource Officer as soon as possible for investigation or disposition.

C. In no event should a regular patrol unit be requested unless you have an uncontrollable situation. After he has stabilized the situation, you should request that he make no decision concerning prosecution of or take possession of the contraband until the matter has been coordinated with the Community Resource Officer or Police headquarters. The School Division has, in conjunction with the Commonwealth's Attorney and the Chief of Police, determined that the Community Resource Officer will make the decision as to the question of prosecution and handling the contraband material.

D. The contraband itself should not be transferred between persons but retained by the first person who takes possession. It should be sealed and annotated as indicated on the attached form. This person must insure that the contraband is in his sole possession, under such security as is necessary to insure that it cannot be removed, replaced, or tampered with until delivered to the police officer. The attached form shall be completed and used by the school official and police officer in all cases involving illegal drugs and/or paraphernalia.

Prince William County
Public Schools

998

<u>PROPERTY RECORD</u>

COUNTY OF PRINCE WILLIAM, VIRGINIA - SCHOOL BOARD

The below listed property was:

    seized          found on this _____ day

of _____ ,19\_\_\_, at_____o'clock   A.M.   P.M.
     month

at _____.
              location - school

1. _____
       item              description

2. _____
       item              description

Taken from _____
                  suspect

Signature of person taking property _____

Case # _____

I HEREBY CERTIFY THAT THE ABOVE DESCRIBED PROPERTY HAS BEEN RECEIVED

FROM _____      ON THIS \_\_\_\_\_DAY

OF_____, 19 \_\_\_, AT _____ o'clock    A.M.   P.M.

Officer _____ Badge # _____