McKEE, Circuit Judge, concurring in part and dissenting in part.
I concur with Part TV of the majority opinion. In addition, I agree that J.H.’s parents are entitled to reimbursement for the 1989-90 academic year and thus concur with Part II B of the majority opinion. However, I believe that J.H.’s parents are entitled to be reimbursed for 1987-88 and 1988-89 as well. Therefore, I respectfully dissent from Part II A of the majority opinion.
*162 I.
The majority errs by allowing the timeliness of the parents’ request for due process to define and control its analysis.[1] The majority states:
[Wjhere proceedings were initiated more than two years after J.H.s transfer, we must place into our equation the practical opportunity afforded the school district to modify its IEP or to determine definitively whether expenditures occurred outside the district could have been obviated by the filing of a prompt complaint.... We, of course, recognize that the school district has the duty in the first instance to provide an appropriate IEP, and moreover, to demonstrate by a preponderance at a due process hearing that the IEP it offered was indeed appropriate. With that foremost in mind, we must nevertheless also recognize that as a practical reality, and as a matter of procedural law of which J.H.s parents were fully apprised, the right of review contains a corresponding parental duty to unequivocally place in issue the appropriateness of an IEP. This is accomplished through the initiation of review proceedings within a reasonable time of the unilateral placement.... We think more than two years, indeed, more than one year, without mitigating excuse, is an unreasonable delay.
Majority opinion at 157-58 (footnote omitted).
I do not agree that the Act “contains a corresponding parental duty.” The Act does not state that the parental right to reimbursement is conditioned upon the parents’ request for a due process hearing. Further, the Act does not specify a time frame within which parents must seek evaluation of an IEP upon pain of forfeiting their child’s right to the benefits of the Act. “[B]oth the parents and the district have an interest in assuring that a handicapped child receives an appropriate education.” Lascari v. Board of Educ., 116 N.J. 30, 560 A.2d 1180, 1188 (1989) (emphasis added). I fail to see where the Act imposes the unilateral parental obligation to which the majority refers and it clearly does not impose a time limitation upon the district court’s authority to grant retroactive reimbursement. The majority has effectively amended the Act in a manner which is inconsistent with its purpose and with the remedial authority that the Act vests in a district court.
A district court’s power to award retroactive reimbursement arises from its authority to grant relief that effectuates the provisions of the Act.
The statute directs the court to ‘grant such relief as [it] determines is appropriate.’ The ordinary meaning of these words confers broad discretion on the court. The type of relief is not farther specified, except that it must be ‘appropriate. ’ Absent other reference, the only possible interpretation is that relief is to be ‘appropriate’ in light of the purpose of the Act.
School Comm. of Burlington v. Department of Educ., 471 U.S. 359, 369, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985) (emphasis added). The purpose of the Act is “ ‘to assure that all handicapped children have available to them ... a free appropriate public education which emphasizes special education ... designed to meet their unique needs [and] to assure that the rights of handicapped children and their parents ... are protected.’” Id. at 367, 105 S.Ct. at 2001 (citing 20 U.S.C. § 1400(c)). The Supreme Court in Burlington unequivocally declared that “a free appropriate public education” means “special education and related services which [] have been provided at public expense, under public supervision and direction, and without charge.... ” Id. at 367-68, 105 S.Ct. at 2001-02 (quoting 20 U.S.C. § 1401(18)) (internal quotation marks omitted).
The Act clearly requires that a school district provide a free appropriate education for eligible students. Thus, the issue before us is not “whether J.H.’s parents requested due process for their son within an appropriate time limitation,” as the majority states. See majority opinion at 151. Rather, the issue we should address is whether the requested *163 relief is “appropriate” in light of the purposes of the Act.
Accordingly, we must examine the circumstances surrounding the request for reimbursement. Our analysis should examine the length of the delay in requesting formal due process and the number of years for which compensation is requested, the adequacy of the IEP that caused the parents to withdraw J.H., the bona fides of the parties, and the school district’s notice of the problem and of the likelihood that it may be asked to reimburse J.H.’s parents.
The Length of the Delay.
This is not a case of parents seeking reimbursement for an entire elementary and secondary education after allowing many years to pass before requesting a due process hearing. The delay in commencing due process was not exorbitant. Moreover, “[t]he fact that here the regulations do not specify a time limitation within which to bring a due process hearing, as well as the very nature and social significance of the education of children with disabilities, [should] incline us to equitable considerations.” Majority opinion at 157. Furthermore, although the school district would no doubt prefer to avoid any additional expenditures, the school district does not claim that the cost of having to reimburse J.H.’s parents for J.H.’s entire three years at Landmark will interfere with its ability to educate other children.
The IEP.
The IEP that caused J.H.’s parents to withdraw him from Bernardsville was, indeed, woefully inadequate. The majority opinion sets forth at length the inadequacy of that IEP[2] and appropriately concludes that “[t]he record bespeaks an appalhng failure on the part of the educational bureaucracy to develop and implement an appropriate IEP.” Majority opinion at 156. Moreover,
the district court concluded that the Ber-nardsville School District failed to confer upon J.H. even the minimally satisfactory educational benefit under the least stringent standard which could arguably have been applied, and that the IEPs developed for J.H. during the relevant school years were not reasonably calculated to confer an educational benefit.... [T]he district court affirmed the administrative law judges specific findings, including that the IEPs did not contain adequate statements of current educational status or measurable annual goals, were virtually redundant from year to year and hence unresponsive to J.H.s apparent difficulties....
Majority opinion at 155. In short, “the IEP developed for [J.H.] was both procedurally and substantively inadequate.” Majority opinion at 157. It is thus little wonder that J.H. failed to progress educationally, socially, or developmentally from kindergarten to seventh grade when his parents finally said “enough” and withdrew him from the Ber-nardsville district.
The Good Faith of the Parties.
“There is no evidence whatsoever that J.H.’s parents acted in bad faith, and given the severe deficiencies in the IEPs developed for J.H. at Bernardsville, it is clear that J.H.’s parents acted reasonably_” Majority opinion at 157. Indeed, given their concern for their child, they had no option but to withdraw J.H. from the Bernardsville district.
The good faith of J.H.’s parents is in stark contrast to the attitude and behavior of the school district. J.H.’s placement at Ber-nardsville was “inappropriate and not reasonably calculated to confer educational benefit on J.H.” Majority opinion at 152. ‘Tear after year the School District failed to design an Individualized Educational Program suitable to J.H.’s special needs, and failed to intervene responsibly in his quite apparent trend of academic and social deterioration.” Majority opinion at 151. Thus, the school district almost totally disregarded its duty to J.H. and his welfare.
Notice.
The Bernardsville District had been aware of J.H.’s developmental problems since J.H.’s enrollment in kindergarten. J.H. had been evaluated and assessed by the appropriate school personnel since J.H.’s earliest days in the Bernardsville School District. Aceord- *164 ingly, “it is untenable for the school district to maintain the argument that it was not aware of a problem with the IEP it offered, virtually unmodified, to J.H. year after year despite his lack of academic progress, and in the face of his social regression.” Majority opinion at 157. Quite naturally, J.H.’s parents were dissatisfied, and the school district was well aware of their dissatisfaction. In August of 1987, J.H.’s parents requested that school officials place J.H. at Landmark. Upon the district’s refusal to do so the parents unilaterally withdrew J.H. and placed him at Landmark themselves.
II.
The majority’s analysis fails to adequately consider the totality of these factors which weigh so heavily in favor of the parents. Instead, the majority leans with sufficient force upon the parents’ delay in requesting due process hearings to tip the equitable balance in favor of the school district:
We are cognizant of the fact that the school district serves a very large student population, and in light of the numerous contacts it has with parents seeking the individual welfare of their respective children, mere notice of parental “dissatisfaction” does not alone put the Board on reasonable notice that the parents will challenge a particular IEP in the future and seek reimbursement for an interim unilateral placement in a private institution.
Majority opinion at 158. J.H.’s situation presents far more than mere notice of parental ‘dissatisfaction.’” This is not a ease of disgruntled and unrealistic parents who are concerned that the school’s curriculum is not sufficiently challenging their child. Furthermore, the size of the student population and the number of parental contacts is not pertinent to our inquiry. An eligible child in a large urban school district is entitled to the same free appropriate education as a child in the smallest rural community. The Act does not distinguish based upon the size of the student population and we should not allow that distinction to influence our analysis. The school district’s size is no excuse for its conduct in this case.
The Bemardsville District was clearly on notice, albeit not through a formal due process request, that J.H.’s parents wanted the school district to pay for the cost of Landmark. The district could have requested hearings in order to have the adequacy of its IEP promptly determined and thereby prevented the very problem it now complains of, notwithstanding the majority’s conclusion that the Act imposes a unilateral obligation on the parents. “When a dispute arises between the board and the parents, either party has the right to resolve the matter through an administrative proceeding known as an ‘impartial due process hearing.’ ” Las-cari, 560 A.2d at 1183 (citing 20 U.S.C. § 1415(b)(2)).
Courts have routinely held that equity requires the burdens of the Act be placed on the school district and not on the parents. See McKenzie v. Smith, 771 F.2d 1527, 1531 (D.C.Cir.1985) (where district sought to change child’s IEP, it had the burden of proving that the proposed placement complied with the requirements of the Act); Grymes v. Madden, 672 F.2d 321, 322 (3d Cir.1982) (affirming district court’s decision that the district had “failed to sustain its burden of proof that an appropriate public program existed”); Cf. S-1 v. Turlington, 635 F.2d 342, 348-49 (5th Cir.) (burden on district to question whether student’s misconduct is due to handicap because parents lack expertise to develop an appropriate IEP for their child), cert. denied 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981), abrogated on other grounds by Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). It is understandable that a school district may be reluctant to initiate formal proceedings against a parent. However, the district’s failure to do so ought to be considered when it asserts that parental delay exonerates it from its failure to provide a student with a free appropriate public education.
Moreover, an argument similar to that accepted by the majority was rejected by the Supreme Court in Burlington. The town in Burlington argued that the parents had forfeited their claimed right to reimbursement for alternative placement by removing their child from public school during the pendency *165 of administrative proceedings in violation of 20 U.S.C. § 1415(e)(3).[3] The Supreme Court responded by stating:
We do not agree with the Town that a parental violation of § 1415(e)(3) constitutes a waiver of reimbursement. The provision says nothing about financial responsibility, waiver, or parental right to reimbursement at the conclusion of judicial proceedings. Moreover, if the provision is interpreted to cut off parental rights to reimbursement, the principal purpose of the Act will in many cases be defeated in the same way as if reimbursement were never available.... The Act was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives.
Burlington, 471 U.S. at 372, 105 S.Ct. at 2004. This case is different because we are concerned with parents who withdrew their child prior to requesting administrative hearings. Yet, the situation before us is analogous to Burlington and the difference does not allow us to abandon the Supreme Court’s reasoning.
III.
We do not achieve “substantial justice” by awarding reimbursement for the 1989-90 academic year and requiring the parents to pay the remaining two thirds of J.H.’s tuition expense. See majority opinion at 159-60. These parents are seeking reimbursement, not damages. “Reimbursement merely requires the [Bernardsville School District] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP.” Burlington, 471 U.S. at 370-71, 105 S.Ct. at 2003.
The parents’ request for the 1987-88 and 1988-89 academic years is appropriate and should be granted. Our failure to affirm the district court effectively shifts most of the obligation of providing an appropriate education from the Board to the shoulders of J.H.’s parents. Accordingly, I respectfully dissent from Part II A of the majority opinion.

. Because I agree with much of the majority’s assessment of this case, I take the liberty of quoting at length from the majority opinion in explaining my reasons for dissenting.

. See majority opinion at 153-54.

. Section 1415(e)(3) states in part: “During the pendency of any proceedings conducted pursuant to [§ 1415], unless the State or local educational agency and the parents ... otherwise agree, the child shall remain in the then current educational placement....” 20 U.S.C. § 1415(e)(3) (1988).